**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| A.C., by and through his parents and guardians, M.C. and G.D., | Civil No. 06-3099 (DWF/RLE) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Independent School District No. 152; Moorehead Area Public Schools; Dr. Larry P. Nybladh, Superintendent; Jill Skarvold, Special Education Director, in her individual and representative capacities; Gene Boyle, Principal, in his individual and representative capacities; and Katie Bormann, Teacher, in her representative and individual capacities, | |
| Defendants. | |

_____

Margaret O'Sullivan Kane, Esq., Kane Education Law, LLC, counsel for Plaintiff.

Charles E. Long, Esq., and Susan E. Torgerson, Esq., Kennedy & Graven, Chartered, counsel for Defendants.
_____

**INTRODUCTION**

A.C., an autistic male, by and through his guardians and parents, M.C. and G.D., brought this action against the above-named Defendants, after he was placed in a windowless, small room during large parts of his school days. This matter came before the Court on October 6, 2006, pursuant to Defendants' Motion to Dismiss under Federal Rule

of Procedure 12(b)(1), (5), and (6). For the reasons set forth below, the Court grants, in part, and denies, in part, the motion.

## BACKGROUND

### I.     The Parties

A.C. is a 20-year-old, non-verbal, severely cognitively impaired autistic student who resides with his parents, M.C. and G.D., in Moorhead, Minnesota, which is within the boundaries of Independent School District No. 152 (the "District"). He is eligible to receive special education and related services due to his condition until he reaches the age of 21. A.C. attended one of the District's schools, Moorhead Senior High School, until February 2006, when his parents removed him from the school.

Dr. Larry P. Nybladh is the superintendent of Moorhead Public Schools. Jill Skarvold is the special education director of Moorhead Public Schools. Gene Boyle is the principal of Moorhead Senior High School. Katie Bormann was A.C.'s teacher at Moorhead Senior High School.

### II.    A.C.'s IEP and BIP

In February 2005, A.C's parents, the District, the District staff, and the District's private consultant developed a behavior intervention plan ("BIP") and an individualized education program ("IEP") for A.C. In September and October 2005, these parties met again to revise the BIP and IEP. On October 11, 2005, they agreed to a new BIP.

Because A.C. needs one-to-one or one-to-two instruction at all times, it was recommended that A.C. spend at least some time in a distraction-free room working with

various paraprofessionals. In addition, the BIP described various protocols to be used when A.C. became disruptive, and if those did not work, the BIP stated that A.C. was to be taken to a time-out room until he became physically quiet for five minutes.

According to the Complaint, beginning in November 2005, A.C. was placed for long periods of time in a small, windowless room that was numbered "208."[1] Various paraprofessionals came to room 208 to work with A.C. At least one paraprofessional complained to Bormann that A.C.'s behavior seemed to escalate when he was confined to room 208 and that she needed additional materials to teach A.C. Despite these complaints, A.C. remained in room 208 for most of his school days. During this time, A.C.'s parents did not know about room 208 and had never seen room 208, although they observed that A.C. stopped wanting to go to school.

On February 2, 2006, M.C., A.C's mother, came to the school and discovered that A.C. was spending many hours a day in room 208. Room 208 had nothing on the walls, contained only three chairs and a desk, and, in addition to the number 208, had a sign that said "storage." When M.C. arrived at the school on February 2, she took A.C. to the restroom, and when she returned, the storage sign had been removed. Shortly thereafter, A.C.'s parents removed A.C. from the school.

---

1   A.C. was first placed in room 218E, which is a small office with a window measuring approximately 91.8 square feet. According to Defendants, A.C. was moved from room 218E to room 208 because A.C. was distracted in room 218E. A.C. describes room 208 as a storage closet. Defendants describe room 208 as a "therapy room" measuring approximately 70.5 square feet and providing a distraction-free environment for A.C.

### III.     Procedural Posture

On February 6, 2006, A.C. requested an administrative hearing through the Minnesota Department of Education. Sometime thereafter, Defendants attempted to work with A.C.'s parents to resolve the situation, but they could not agree on a solution. On March 7, 2006, Defendants moved to dismiss A.C.'s complaint for lack of subject matter jurisdiction. On March 24, 2006, an administrative law judge granted Defendants' motion and dismissed A.C.'s complaint without prejudice, concluding that he lacked subject matter jurisdiction over A.C.'s Individual with Disabilities Education Act ("IDEA") claims because A.C. was no longer enrolled in the District and that "nothing in Minnesota statute or rule or the IDEA empowers or specifically grants jurisdiction to the hearing officer to hear non-FAPE [free and appropriate education] issues or award monetary damages."

On July 25, 2006, A.C. filed his 13-count Complaint in this Court. On August 18, 2006, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction, failure to state a claim upon with relief can be granted, and insufficient service of process.

### DISCUSSION

### I.     Lack of Subject Matter Jurisdiction

Defendants move to dismiss some of A.C.'s claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In order to succeed on a Rule 12(b)(1) motion, the moving party must successfully attack a complaint either upon its face or upon the factual truthfulness of its averments. *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Here, Defendants make a "facial attack" on A.C.'s claims.

(Defs.' Summ. J. Mem. at 6.)

When considering a facial attack, a court restricts itself to considering the face of the pleadings, and the plaintiff receives the same protections as he would defending against a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Osborn*, 918 F.2d at 729 n.6.  In deciding a Rule 12(b)(6) motion, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986). Specifically, here the Court presumes that all of the factual allegations in a complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction.  *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  While a court must generally ignore matters outside the pleadings, a court nonetheless may consider materials that are part of the public record, do not contradict the complaint, or are necessarily embraced by the pleadings.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

Defendants assert that the Court does not have subject matter jurisdiction over A.C.'s claims because he failed to exhaust his administrative remedies before filing his Complaint.  Defendants base their jurisdictional argument on the exhaustion requirements of the IDEA.  In general, a court lacks subject matter jurisdiction to hear an IDEA dispute unless a plaintiff exhausted all available state administrative review procedures prior to filing suit.  20 U.S.C. § 1415; *see also Thompson v. Bd. of Special Sch. Dist. No. 1,* 144 F.3d 574, 581 (8th Cir. 1998); *Larson v. Int'l Falls Pub. Sch.*, 2002 WL 31108199 at * 3

(D. Minn. Sept. 11, 2002). The only exception to the IDEA exhaustion requirement is that a party may circumvent the administrative process if he or she can demonstrate that: (1) exhaustion would be futile; (2) exhaustion would fail to provide adequate relief; or (3) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law. *Megan C. v. Indep. Sch. Dist. No. 625*, 57 F. Supp. 2d 776, 789 (D. Minn. 1999).

When a plaintiff brings a claim under another federal statute or the United States Constitution, the IDEA exhaustion requirement applies to the extent that those claims seek relief that is also available under the IDEA. *See* 20 U.S.C. § 1415(l) (noting that exhaustion requirement applies to other federal claims that seek relief that is also available under the IDEA); *Prins v. Indep. Sch. Dist. No. 761*, 23 IDELP 544 (D. Minn. 1995) (discussing exhaustion under the Rehabilitation Act and Americans with Disabilities Act). If the relief sought is "wholly unrelated" to the IDEA, exhaustion is not required. *See M.P. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 868 (8th Cir. 2006) (concluding plaintiff's Rehabilitation Act claim related to disclosure that he was schizophrenic was "wholly unrelated" to IDEA).

Defendants assert that all of A.C.'s claims are IDEA-related because they all involve issues related to disciplinary procedures that impacted A.C.'s right to a free and appropriate education ("FAPE"). A.C. concedes that he must exhaust administrative remedies for his IDEA and IDEA-related claims. (A.C.'s Opp'n Mem. at 8.) However, as he admitted at oral argument, the essence of his case involves his Fourth Amendment claims related to the injuries he sustained as a direct result of being confined to room 208 for long periods of time. A.C. contends that Defendants' acts of confining him to room 208 had nothing to do

with his BIP and/or IEP. Because his injuries from the confinement are not compensable under the IDEA, A.C. asserts that exhaustion for those claims is not required because exhaustion would have been futile and could not have provided him adequate relief.

Here, the parties agree that A.C. was required to exhaust his administrative remedies before filing suit for his IDEA and IDEA-related claims. A.C., however, failed to do so when he did nothing after the ALJ dismissed his original complaint without prejudice. For this reason, the Court lacks subject matter jurisdiction over all of A.C.'s IDEA and IDEA-related claims and grants Defendants' motion with respect to these claims.[2] *See Thompson,* 144 F.3d at 581. A.C. is not, however, required to exhaust his administrative remedies with respect to his claims that are "wholly unrelated" to the IDEA. *See M.P.*, 439 F.3d at 868. Assuming, as the Court must, that the allegations contained in A.C.'s Complaint are true, and viewing those claims in the light most favorable to A.C., those claims that specifically relate only to A.C's confinement against his will may not be related to the IDEA.[3] Therefore, at this stage, the Court denies Defendants' motion with respect to A.C.'s non-IDEA-related claims.

---

2     Based on a thorough reading of the 13-count Complaint and the parties' memoranda and statements made at the motion hearing, the Court concludes that Counts 6, 7, and 8 are IDEA and IDEA-related claims that must be dismissed. To the extent that Counts 1, 2, 3, and 4 relate to A.C.'s FAPE, they are also IDEA-related and must be dismissed.

3     To the extent that Counts 1, 2, 3, and 4 relate solely to A.C.'s confinement, they may not be IDEA-related and therefore must remain at this early stage in the litigation. The Court strongly urges A.C. to file an amended and streamlined Complaint that clearly alleges only those counts that survive after this Order.

## II.     Failure to State a Claim Upon Which Relief Can Be Granted

As stated above, in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton,* 793 F.2d at 187.  First, Defendants move to dismiss Count 5, in which A.C. asserts a claim under 42 U.S.C. § 1983, because alleged violations of the IDEA cannot serve as the basis for a § 1983 claim.  The Court agrees.  Here, A.C.'s alleged violations of the IDEA cannot serve as the basis for a § 1983 claim because general and punitive damages for the types of injuries alleged by A.C. are not available under the IDEA.  *See Heidemann v. Rother*, 84 F.3d 1021, 1033 (8th Cir. 1996).  Accordingly, the Court grants Defendants' motion with respect to Count 5.

Next, Defendants move to dismiss Count 9, in which A.C. asserts a claim under the Minnesota Human Rights Act ("MHRA).  Defendants contend that state human rights acts are subject to the IDEA exhaustion requirement.  (Defs.' Summ. J. Mem. at 13)  (*citing only Jenkins v. Carney-Nadeau Public Sch.*, 505 N.W.2d 893 (Mich. Ct. App. 1993)).  At this stage, without more on-point authority concerning the MHRA, the Court declines to grant Defendants' motion with respect to Count 9.

Finally, Defendants move to dismiss Counts 10 (negligent infliction of emotional distress), 11 (negligent hiring, training, and supervision), 12 (intentional infliction of emotional distress), and 13 (invasion of privacy) because they are preempted by A.C.'s claim under the MHRA.  Cases addressing the exclusivity provision of the MHRA have not

8

been uniform.  *See, e.g.*, *Hollen v. USCO Distribution Services*, Inc., 2004 WL 234408 at * 9 (D. Minn. Feb. 3, 2004) (summarizing recent cases concerning exclusivity under the MHRA).  Viewing the evidence in the light most favorable to A.C., the Court concludes that A.C.'s state-law tort claims are preempted by the MHRA because A.C. has not identified any duty owned to him that is separate from the duties created by the MHRA.  Moreover, A.C. abandoned these claims when he failed to address the preemption argument in his opposition memorandum.  *See Thomsen v. Ross*, 368 F. Supp. 2d 961, 974 n.9 (D. Minn. 2005) (concluding that plaintiff had abandoned claims not addressed in his opposition to summary judgment motion).  Therefore, the Court will grant Defendants' motion with respect to Counts 10, 11, 12, and 13.

**III.     Insufficient Service of Process**

Defendants move to dismiss the remaining claims for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).  Defendants contend that A.C. served only Superintendent Nybladh and that service on Nybladh is insufficient to effectuate service on the remaining Defendants.  A.C. responds by asserting that he is in the process of perfecting service.[4]

A court may dismiss an action without prejudice if service is not made "within 120 days after the filing of the complaint."  Fed. R. Civ. P. 4(m).  A.C. commenced this action on July 25, 2006.  Defendants moved to dismiss for insufficient service of process on August 18, 2006, before the 120-day period had expired.  Because A.C. may effectuate service before the 120-day period expires, Defendants' motion to dismiss for insufficient service of process is premature and must be denied.  The Court assumes A.C. will properly serve Defendants; if he fails to do so within the 120-period, Defendants may bring a new motion under Rule 12(b)(5).

---

4       Although not explicitly required, a party moving to dismiss under Rule 12(b)(5) usually submits affidavits to establish that he or she was not properly served.  *See* 5B Wright & Miller, Federal Practice and Procedure: Civil 3d § 1353 (2004).  The plaintiff, however, has the ultimate burden establishing the validity of service of process.  *See Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir. 1995).  Normally, a plaintiff meets this burden by filing proof of service as required by Federal Rule of Civil Procedure 4(l) and submitting affidavits establishing service.  *See id*.

## CONCLUSION

At this stage of the proceedings in this case, the record is undeveloped as to the exact circumstances surrounding the development of A.C.=s IEP and BIP or the circumstances under which A.C.'s parents came into contact with the District's educational authorities.  The Court has heard a number of IDEA cases over its nearly 22 years on the bench and knows how difficult these cases can be for all parties concerned. The Court fears that sometimes parents do not appreciate the full impact of decisions made at IEP-BIP meetings or do not have the confidence to question educational authorities.

It has been the Court=s experience that a dispute is more likely to be resolved early on if an advocate or lawyer becomes involved early in a dispute, thereby saving all parties time, expense, frustration and anxiety.  Consequently, whether it is a school district recommending that parents consult with a lawyer or an advocacy program or parents on their own initiative doing so, the best interests of all parties—especially the child or children involved—are best served if parents receive help early in the dispute process.  For this reason, the Court hopes that parents take advantage of support that is available to them from places such as the PACER Center for Parental Advocacy (8161 Normandale Boulevard, Minneapolis, MN 55437; 952-838-9000; www.pacer.org).  Regardless of whether a school district suggests to parents that they seek outside support, parents ultimately make their own decisions whether to seek support from advocacy groups such as PACER, from lawyers, or from both.  The Court recognizes the costs of retaining a lawyer may be prohibitive to some parents.  In such situations, the Volunteer Lawyers Network

(600 Nicollett Mall, Suite 390A, Minneapolis, MN 55402; 612-752-6677;

[www.volunteerlawyersnetwork.com](www.volunteerlawyersnetwork.com)) may be able to help some parents, if they are eligible to receive help.

    Accordingly, **IT IS HEREBY ORDERED** that:

    1.    Defendants' Motion to Dismiss (Doc. No. 9) is **GRANTED, IN PART, AND DENIED, IN PART**.

    2.    Counts 6, 7, and 8 contained in the Complaint (Doc. No. 1) are **DISMISSED WITHOUT PREJUDICE**.

    3.    Counts 5, 10, 11, 12, and 13 contained in the Complaint (Doc. No. 1) are **DISMISSED WITH PREJUDICE**.

Dated: November 7, 2006        s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      Judge of United States District Court