UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

A.C., by and through his parents and
guardians, M.C. and G.D.,

Civil No. 06-3099 (DWF/RLE)

Plaintiff,

v.

MEMORANDUM
OPINION AND ORDER

Independent School District No. 152;
Moorehead Area Public Schools; Dr. Larry P.
Nybladh, Superintendent; Jill Skarvold, Special
Education Director, in her individual and
representative capacities; Gene Boyle, Principal,
in his individual and representative capacities;
and Katie Bormann, Teacher, in her representative
and individual capacities,

Defendants.

_____

Margaret O'Sullivan Kane, Esq., Kane Education Law, LLC, counsel for Plaintiff.

Charles E. Long, Esq., and Susan E. Torgerson, Esq., Kennedy & Graven, Chartered, counsel for Defendants.

_____

**INTRODUCTION**

A.C., an autistic male, by and through his parents and guardians, M.C. and G.D., brought this action against the above-named Defendants after A.C. was placed in a windowless, small room during large parts of his school days. This matter came before the Court on April 20, 2007, pursuant to Defendants' Amended Motion to Dismiss under Federal Rule of Procedure 12(b)(5) and Defendants' Motion for Summary Judgment. For

the reasons set forth below, the Court grants Defendants' Amended Motion to Dismiss and denies Defendants' Motion for Summary Judgment.

## BACKGROUND

### I. The Parties

A.C. is a 20-year-old, non-verbal, severely cognitively impaired autistic student who resides with his parents, M.C. and G.D., in Moorhead, Minnesota, which is within the boundaries of Independent School District No. 152 (the "District"). He is eligible to receive special education and related services due to his condition until he reaches the age of 21. A.C. attended one of the District's schools, Moorhead Senior High School, until February 2006, when his parents removed him from the school.

Dr. Larry P. Nybladh is the superintendent of Moorhead Public Schools. Jill Skarvold is the special education director of Moorhead Public Schools. Gene Boyle is the principal of Moorhead Senior High School. Katie Bormann was A.C.'s teacher at Moorhead Senior High School.

### II. Room 208

In February 2005, A.C's parents, the District, the District staff, and the District's private consultant developed a behavior intervention plan ("BIP") and an individualized education program ("IEP") for A.C. In September and October 2005, these parties met to revise the BIP and IEP. On October 11, 2005, they agreed to a new BIP and IEP.

Because A.C. needs one-to-one or one-to-two instruction at all times, it was recommended that A.C. spend at least some time in a distraction-free room working with

various paraprofessionals. Specifically, A.C.'s IEP provided that he would be in the distraction-free room for four different sessions each day, totaling 1 hour and 45 minutes. The IEP also provided that A.C. would not be in this distraction-free room for more than 30 minutes at a time. A.C.'s BIP described various protocols to be used when A.C. became disruptive. If the protocols did not work, the BIP stated that A.C. was to be taken to a time-out room until he became physically quiet for five minutes.

Initially, the District staff placed A.C. in Room 218 in Moorhead Senior High School when he needed a distraction-free room. Sometime later, the District staff determined that Room 218 was too distracting for A.C. because it had windows and cabinets. The District staff then moved him to Room 208. Room 208 is a windowless room measuring approximately 70.5 square feet. A.C. refers to the room as a "storage closet," and Defendants refer to it as a "therapy room." Room 208 was equipped with only a desk and a chair; it had nothing on the walls.

It is undisputed that various members of the District staff met with A.C. in Room 208. However, the parties dispute whether instruction materials were brought into the room or used for A.C., whether the staff was trained to instruct A.C., and whether Bormann instructed A.C. in Room 208. The parties also dispute how much time A.C. spent in Room 208. A.C. asserts he was placed in the room for up to four to six hours a day. In contrast, Defendants assert that A.C. did not spend more than 30 minutes at a time in Room 208 (unless he fell asleep) and that the total time A.C. spent in Room 208 was 1 hour and 45 minutes per day. They also contend that they never left A.C. alone in

Room 208.

In February 2006, A.C.'s mother, M.C., visited A.C. at school. When she arrived, Room 208 had a sign on it that said "Storage Closet." After she took A.C. to the restroom, the sign was removed. Shortly thereafter, A.C.'s parents removed him from the school.

**III.   Procedural Posture**

On February 6, 2006, A.C. requested an administrative hearing through the Minnesota Department of Education. Sometime thereafter, Defendants attempted to work with A.C.'s parents to resolve the situation, but the parties could not agree on a solution. On March 7, 2006, Defendants moved to dismiss A.C.'s complaint for lack of subject matter jurisdiction. On March 24, 2006, an administrative law judge granted Defendants' motion and dismissed A.C.'s complaint without prejudice, concluding that he lacked subject matter jurisdiction over A.C.'s Individual with Disabilities Education Act ("IDEA") claims because A.C. was no longer enrolled in the District and that "nothing in Minnesota statute or rule or the IDEA empowers or specifically grants jurisdiction to the hearing officer to hear non-FAPE [free and appropriate education] issues or award monetary damages." (Compl., Ex. A at 4.)

On July 25, 2006, A.C. filed a 13-count Complaint in this Court. On August 18, 2006, Defendants moved to dismiss the Complaint for lack of subject matter jurisdiction, failure to state a claim upon with relief can be granted, and insufficient service of process. The Court granted in part and denied in part Defendants' motion to dismiss in an Order

dated November 7, 2006.  Specifically, the Court denied Defendants' motion to dismiss with respect to Counts One through Four to the extent that they relate solely to A.C.'s confinement against his will because, given the procedural posture of the litigation at that stage, the counts may not be subject to the IDEA-exhaustion requirement.  The Court also denied Defendants' motion to dismiss with respect to Count Nine.

## DISCUSSION

**I.    Motion to Dismiss**

Defendants Skarvold, Boyle, and Bormann (collectively, the "Individual Defendants") move to dismiss A.C.'s claims against them for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5).  A.C. commenced this action on July 25, 2005, but he failed to serve these three Individual Defendants within 120 days, or by November 22, 2006, as required by Rule 4(m).[1]  Instead, A.C. did not serve the Individual Defendants until January 25, 2007.  (*See* Affidavits of Skarvold, Boyle, and Bormann.)

A.C. responds that the Individual Defendants should not be dismissed because this

---

[1]   A.C. did serve Superintendent Nybladh and the School Board within 120 days. Notably, A.C. named Nybladh as a defendant in his official capacity only.  "A suit against a public official in his individual capacity requires that the public official be named in his personal capacity as an individual." *See, e.g., Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998).  If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity. *Id*.

action has not been delayed by his lack of service, he tried numerous times to serve the Individual Defendants, and the Individual Defendants had actual notice of this action. At a minimum, A.C. asserts that they should remain in the case in their representative capacities.

Properly effected service of process is a fundamental element to any lawsuit. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Defects in service of process are jurisdictional in nature. If a defendant is improperly served, a federal court lacks jurisdiction over the defendant. *Printed Media Serv., Inc. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993). Under the Federal Rules of Civil Procedure, a plaintiff has 120 days to serve a defendant. Fed. R. Civ. P. 4(m). If the 120-day period elapses, a court must dismiss the complaint without prejudice unless a plaintiff can show "good cause" for failure to timely serve the summons and complaint on the opposing party. *Id.*

In its previous Order, the Court reminded A.C. of his obligation to serve the Individual Defendants within 120 days. (Nov. 7, 2007 Order at 10-11.) But A.C. failed to do so. A.C. offers no explanation for his failure to timely serve the Individual Defendants. Instead, he blames the District for not giving him the home addresses of the Individual Defendants. A.C. fails to recognize, however, that he knew where the Individual Defendants worked each day during the school year and that he could have personally served the Individual Defendants at any time while they were at work. Given

these factors, good cause does not exist, and the Court must dismiss the claims against the Individual Defendants in their individual capacities for lack of jurisdiction.[2]

Moreover, A.C.'s claims against the Individual Defendants in their official capacities will be dismissed because they are redundant to their claims against the District. *See, e.g., Artis*, 161 F.3d at 1182 (affirming district court's dismissal of § 1983 claim against band director in official capacity as redundant of claim against school district); *R.P. ex rel. K.P. v. Springdale Sch. Dist.*, 2007 WL 552117, at *6 (W.D. Ark. Feb. 21, 2007) (dismissing ADA and Rehabilitation Act claims against school officials in their official capacities because they were redundant of plaintiff's claims against school district).

## II. Motion for Summary Judgment

The remaining Defendants[3] move for summary judgment on those portions of Counts One through Four that remain and on Count Nine.

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences, which may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*

---

2   Given this, the Court does not reach the Individual Defendants' immunity arguments.

3   The Court will now refer to the remaining Defendants as "Defendants."

*of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  As the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**A.  Counts One Through Four**

A.C. alleges four counts against Defendants for violations under 42 U.S.C. § 1983.  When bringing a § 1983 claim, a plaintiff must establish (1) a deprivation of a right secured by the Constitution or laws of the United States and (2) that the deprivation was committed under color of state law.[4]  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982).  Section 1983 "is not itself a source of substantive rights but merely provides a

---

4    Defendants do not contest that they were acting under the color of state law.
(Footnote Continued on Next Page)

method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted). A.C. asserts that Defendants violated his Fourth and Fourteenth Amendment rights. Specifically, he alleges claims of unreasonable seizure and violations of his due process rights. Defendants argue that they are entitled to summary judgment on these four counts for three reasons. The Court will address each in turn.

### 1. Are the Counts IDEA-Related?

When a plaintiff brings a claim under a federal statute (not the IDEA) or the United States Constitution, the IDEA exhaustion requirement applies to the extent that those claims seek relief that is also available under the IDEA. *See* 20 U.S.C. § 1415(l) (noting that the exhaustion requirement applies to other federal claims that seek relief that is also available under the IDEA). If, however, the relief sought is "wholly unrelated" to the IDEA or IEP-process, exhaustion is not required. *See M.P. v. Indep. Sch. Dist. No. 721*, 439 F.3d 865, 868 (8th Cir. 2006) (concluding plaintiff's Rehabilitation Act claim that related to the disclosure that he was schizophrenic was "wholly unrelated" to IDEA). The IEP-process involves individual identification, evaluation, educational placement, and free, appropriate education decisions. *Id*.

In the November 7, 2007 Order, the Court denied Defendants' motion to dismiss with respect to the claims contained in Counts One through Four that relate only to A.C's

(Footnote Continued From Previous Page)

confinement against his will because they may not be related to the IDEA or IEP-process and therefore may be exempt from the exhaustion requirement. (November 7, 2007 Order at 6-8.) Now, Defendants assert that they are entitled to summary judgment on the surviving portions of these counts because A.C. has not met his burden of showing that these claims are "wholly unrelated" to the IEP-process. Based on Skarvold's affidavit, Defendants contend that because they used Room 208 "exclusively as a part of [A.C.'s] special education program, any issue related to its use must have been exhausted through the IDEA's administrative process." (Defs' Summ. J. Mem. at 10.) Given the purpose of Room 208, Defendants argue that A.C.'s claims fail because he failed to exhaust his administrative remedies.

A.C. responds that there is no relationship between why he was placed in Room 208 and his IEP. Relying on the affidavits of two of his former paraprofessionals, Elizabeth Vargas and Robert Garcia, A.C. contends that there was no educational purpose for placing him in Room 208 for up to six hours a day. He argues that he received no meaningful instruction in Room 208 and that his IEP did not require him to be placed in Room 208 for long periods of time.

In essence, Defendants argue that because they say Room 208 was intended for educational purposes, it must be so. The Court disagrees. Viewing the evidence in the light most favorable to A.C., the Court finds that there are genuine issues of material fact concerning the underlying legal issue of whether Counts One through Four are IDEA-related and thus subject to the exhaustion requirement. The Court therefore denies

Defendants' motion with respect to this argument.

### 2. Was A.C. Unlawfully Seized?

In Counts One, Three, and Four, A.C. alleges that he was unlawfully seized when he was placed in Room 208. The Fourth Amendment to the United States Constitution is applicable to the States through the Fourteenth Amendment. *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). It protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To establish a violation of the Fourth Amendment in a § 1983 action, a plaintiff must demonstrate that a seizure occurred and that the seizure was unreasonable. *Hawkins v. City of Farmington*, 189 F.3d 695, 702 (8th Cir. 1999). A person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Reasonableness of a seizure is determined by the totality of the circumstances. *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003).

Without question, the Fourth Amendment protection extends to students attending public schools. *See, e.g., New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). The nature and scope of students' constitutional rights, however, are concomitant with their status as children in school. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995). Specifically, although children do not "shed their constitutional rights . . . at the schoolhouse gate," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506

(1969), "the nature of those rights is what is appropriate for children in school." *Vernonia*, 515 U.S. at 655-56. "A teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent." *Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1014 (7th Cir. 1995).

Defendants assert that A.C.'s Fourth Amendment rights were not violated on the evidence presented. Instead, they argue that A.C. was not seized at all, much less seized in a manner that violated his constitutional rights. They point out that the students' movements and locations are always subject to teachers' and administrators' control, which does not violate students' constitutional rights. *See, e.g., Doe v. Renfrow*, 475 F. Supp. 1012, 1019 (N.D. Ind. 1979) (discussing how the regulation of a student's movement does not deny that person any constitutionally guaranteed right), *aff'd in part and remanded in part*, 631 F.2d 91 (7th Cir. 1980). Defendants contend that A.C. has presented no facts to show that he was seized when they required him to spend no more than 30 minutes at a time with an aide in an "alternative learning space," specifically "a classroom specially selected and designed by his IEP team and an outside autism consultant." (Defs' Summ. J. Mem. at 17-18.) Defendants also argue that A.C. could not have been seized because his parents consented to his IEP. Finally, even if A.C. was seized, Defendants assert that any seizure was reasonable based on A.C.'s level of distractibility and his need for instruction in a distraction-free room.

In response, A.C. relies on Vargas's and Garcia's affidavits to establish that he was

unreasonably seized when Defendants forced A.C. to spend the majority of his school days in Room 208, which was not consistent with what was called for in A.C.'s IEP. At a minimum, A.C. asserts that there is a genuine issue of material fact with respect to Counts One, Three, and Four.

The Court agrees with A.C. It is true that not all instruction in Room 208 would or could constitute an unlawful seizure. Here, however, viewing the evidence in the light most favorable to A.C., there are genuine issues of material fact concerning under what conditions and for how long A.C. was placed in Room 208. Given this, there are factual disputes concerning whether Defendants acted appropriately in their custodial care of A.C. Therefore, the Court denies Defendants' motion with respect to Counts One, Three, and Four.

### 3.     Was A.C.'s Denied Due Process?

In Count Two, A.C. alleges that Defendants denied him his procedural and substantive due process when they unlawfully seized and confined him. Defendants argue that A.C. was not denied his due process rights because his parents approved his IEP, which allowed him to be placed for certain periods of time in a distraction-free room. Defendants also point out that they tried to negotiate a compromise with A.C. after his parents removed him from the District and that, for this reason, he was given a meaningful chance to be heard. A.C. responds that he was given no due process at all, either procedural or substantive.

The fundamental requirement of procedural due process is the opportunity to be

heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The nature of this constitutional guarantee is flexible, however, and varies with the particular situation. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Viewing the evidence in the light most favorable to A.C., the Court finds that there are genuine issues of material fact with respect to whether A.C. was given an opportunity to be heard at a meaningful time and in a meaningful manner before he was allegedly placed in Room 208 longer than outlined in his IEP. Given this, the Court denies Defendants' motion with respect to Count Two insofar as it relates to procedural due process.

To establish a violation of his substantive due process rights, A.C. needs to show that Defendants' conduct was arbitrary and capricious. *Peterson v. Indep. Sch. Dist. No. 811,* 999 F. Supp. 665, 673 (D. Minn. 1998). "Conduct is arbitrary and capricious only if there is no rational basis for a decision or a decision is motivated by bad faith or ill-will." *Id*. "The theory of substantive due process is properly reserved for truly egregious and extraordinary cases." *Myers v. Scott County*, 868 F.2d 1017, 1017 (8th Cir. 1989). Viewing the evidence in the light most favorable to A.C., the Court concludes that there are genuine issues of material fact with respect to whether Defendants' actions in placing A.C. in Room 208 for long periods of time were arbitrary and capricious. Given this, the Court denies Defendants' motion with respect to Count Two insofar as it relates to substantive due process.

    **B.**    **Count Nine**

In Count 9, A.C. asserts a claim under the Minnesota Human Rights Act ("MHRA"). Relying on *S.A.S. v. Hibbing Pub. Sch.*, Civ. No. 69-DU-CV-06 1374, slip. op. at 7) (D. Ct. Minn. Feb. 7, 2006),[5] Defendants contend that A.C.'s MHRA claim is subject to the IDEA exhaustion requirement and therefore barred because he failed to exhaust his administrative remedies. The Court does not read *S.A.S.* to be as broad or definitive as Defendants contend. Instead, as is the case with Counts One through Four, the Court concludes that there are genuine issues of material fact with respect to the underlying legal issue of whether Count Nine, to the extent that it relates to A.C.'s confinement against his will, is subject to the exhaustion requirement. *Cf. M.P.*, 439 F.3d at 868.

The parties agree that in order to establish a claim for discrimination under the MHRA, a plaintiff must establish that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or denied the benefits of the school district's services, programs, or activities; and (3) such treatment was by reason of his disability. *See Moubry v. Indep. Sch. Dist. No. 696*, 9 F. Supp. 2d 1086, 1109 (D. Minn. 1998). Viewing the evidence in the light most favorable to A.C., the Court concludes that there are genuine issues of material fact with respect to whether Defendants violated the MHRA in their treatment of A.C., specially in relation to how much time he was placed in

---

5    The Minnesota Court of Appeals recently affirmed the district court's opinion in that case. *See S.A.S. v. Hibbing Pub. Sch.*, 2007 WL 1322337 (Minn. Ct. App. May 8, 2007).

(Footnote Continued on Next Page)

Room 208 and under what conditions.  Given this, the Court denies Defendants' motion with respect to Count Nine.

## CONCLUSION

This case presents the unusual circumstances of having genuine issues of material fact underlying the legal determination of whether Counts One through Four and Nine are IDEA-related and having traditional factual disputes concerning the underlying counts, all of which depends on the same evidence to be presented at trial.  It remains to be seen whether the underlying legal issues will be decided at the close of discovery or prior to the case being submitted to the jury.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Amended Motion to Dismiss (Doc. No. 58) is **GRANTED.**

2. A.C.'s claims against Defendants Skarvold, Boyle, and Bormann are **DISMISSED WITHOUT PREJUDICE**.

3. Defendants' Motion for Summary Judgment (Doc. No. 65) is **DENIED**.

Dated:  May 22, 2007            s/Donovan W. Frank
                                DONOVAN W. FRANK
                                Judge of United States District Court

---

(Footnote Continued From Previous Page)